Justin A. Martin (SBN 317939)
*justin.martin@dentons.com*
**DENTONS US LLP**
4675 MacArthur Court, suite 1250
Newport Beach, CA 92660
Telephone: (949) 732-3700
Facsimile: (949) 732-3739

Erin E. Bradham (*pro hac forthcoming*)
*erin.bradham@dentons.com*
**DENTONS US LLP**
2398 E. Camelback Road, Suite 850
Phoenix, AZ 85016
Telephone: (602) 508-3900
Facsimile: (602) 955-1002

*Attorneys for Defendant Lexington Insurance Company*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

C.J. SEGERSTROM & SONS,

Plaintiff,

v.

LEXINGTON INSURANCE COMPANY; STARR SURPLUS LINES INSURANCE COMPANY,

Defendants.

Case No. 8:22-cv-00466-MEMF-JDE

**LEXINGTON INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

**(F.R.C.P. 12(b)(6))**

| | |
|---|---|
| **Hearing Date:** | **August 11, 2022** |
| **Courtroom:** | **8B** |
| **Hearing Time:** | **10:00 a.m.** |
| **Judge:** | **Hon. Maame Ewusi-Mensah Primpong** |

**Complaint filed: March 29, 2022**

**NOTICE OF MOTION AND MOTION**

TO THE ABOVE-ENTITLED COURT AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 11, 2022 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8B of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California, Defendant Lexington Insurance Company will and hereby does move the Court to dismiss Plaintiff's Complaint with prejudice because it fails to state a claim for which relief may be granted.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 31, 2022. Declaration of Erin E. Bradham, ¶ 2.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Declaration of Erin E. Bradham, and such other and additional evidence and argument as may be properly presented in support of the motion.

Dated: June 14, 2022

DENTONS US LLP

By: */s/ Justin A. Martin*
Justin A. Martin

Attorneys for Defendant Lexington Insurance Company

# TABLE OF CONTENTS

**Page**

1. INTRODUCTION ........ 6
2. FACTUAL BACKGROUND........ 6
A. The Complaint ........ 6
B. The Policy ........ 7
3. ARGUMENT........ 9
A. Legal Standard........ 9
B. The Contamination Exclusion Endorsement Modifies The Special Time Element Coverage. ........ 10
C. The Contamination Exclusion Endorsement Precludes Coverage. ........ 12
D. Plaintiff's Declaratory and Bad Faith Claims Also Fail. ........ 15
4. CONCLUSION........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Explorer Ins. Co.*, 132 Cal. Rptr. 2d 24 (Cal. Ct. App. 2003)....................10

*AECOM v. Zurich Am. Ins. Co.*, No. LACV2100237 JAKMRWX, 2021 WL 6425546,(C.D. Cal. Dec. 1, 2021)....................11, 13

*Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal. 4th 38 (1997)....................10

*Allen v. Steadfast Ins. Co.*, No. CV-14-1218, 2014 WL 12569527 (C.D. Cal. Aug. 22, 2014)....................12

*Alterra Mountain Co. v. Lexington Ins. Co.*, No. 21-cv-23771 (Denver Cnty. Dist. Ct. Apr. 19, 2022)....................14

*Am. Way Cellular, Inc. v. Travelers Prop. Cas. Co. of Am.*, 157 Cal. Rptr. 3d 385 (Cal. Ct. App. 2013)....................10

*Balistreri v. Pacifica Police Dept*., 901 F.2d 696 (9th Cir.1988)....................9

*Bank of the West v. Sup. Ct.*, 10 Cal. Rptr. 2d 538 (1992)....................9

*Circus Circus LV, LP v. AIG Specialty Ins. Co.*, 525 F. Supp. 3d 1269 (D. Nev. 2021)....................13

*Connick v. Teachers Ins. & Annuity Ass'n of Am*., 784 F.2d 1018 (9th Cir. 1986)....................9

*Genesis Ins. Co. v. BRE Props.*, 916 F. Supp. 2d 1058 (N.D. Cal. 2013)....................15

*Ghukasian v. Aegis Sec. Ins. Co.*, No. B311310, 2022 WL 1421511 (Cal. Ct. App. 2nd Dist. Apr. 14, 2022)....................15

*Hairabedian v. Sec. Nat'l Ins. Co.*,
No. 2:22-cv-00920, 2022 WL 1071508 (C.D. Cal. Mar. 10, 2022), appeal docketed, No. 22-55355 (Apr. 7, 2022) ....7

*Izenberg v. ETS Servs., LLC*,
589 F. Supp. 2d 1193 (C.D. Cal. 2008) ....9

*McKee v. State Farm Fire & Cas. Co.*,
193 Cal. Rptr. 745 (Cal. Ct. App. 1983) ....9

*Minich v. Allstate Ins. Co.*,
122 Cal. Rptr. 3d 769 (Cal. Ct. App. 2011) ....15

*Estate of Murphy*,
147 Cal. Rptr. 258 (Cal. Ct. App. 1978) ....10

*Nat'l Bank of Cal. v. Progressive Cas. Ins. Co.*,
938 F. Supp. 2d 919 (C.D. Cal. 2013) ....11

*Northwell Health, Inc. v. Lexington Ins. Co.*,
550 F. Supp. 3d 108 (S.D.N.Y. 2021) ....13, 14

*Obagi v. Valley Forge Ins. Co.*,
No. 2:20-cv-07059ABGJS, 2021 WL 6104407 (C.D. Cal. Oct. 1, 2021) ....11

*PBM Nutritionals, LLC v. Lexington Ins. Co.*,
724 S.E.2d 707 (Va. 2012) ....13

*State Farm Fire & Cas. Co. v. Lewis*,
236 Cal. Rptr. 807 (Cal. Ct. App. 1987) ....9

*Venoco, Inc. v. Gulf Underwriters Ins. Co.*,
96 Cal. Rptr. 3d 409 (Cal. Ct. App. 2009) ....11

*Waller v. Truck Ins. Exch., Inc.*,
900 P.2d 619 (Cal. 1995) ....9

*Zwillo V, Corp. v. Lexington Ins. Co.*,
504 F. Supp. 3d 1034 (W.D. Mo. 2020) ....13

**Rules and Regulations**

Federal Rules of Civil Procedure
Rule 12(b)(6) ....6, 8, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Lexington Insurance Company ("Lexington") submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

### 1. INTRODUCTION

Plaintiff alleges that Lexington must pay under a commercial property insurance policy for alleged financial losses incurred as a result of COVID-19-related closures even though such losses are excluded from coverage under the express terms of the policy. Indeed, an endorsement to the policy specifically modifies the policy to exclude loss caused directly or indirectly by the actual or threatened spread of viruses, like the COVID-19 coronavirus, that harm human health or cause loss of use of property. This plain and clear endorsement modifies and trumps any provisions in the main body of the policy that may have otherwise provided coverage for Plaintiff's alleged loss. Plaintiff's claims fail as a matter of law and should be dismissed with prejudice.

### 2. FACTUAL BACKGROUND

#### A. The Complaint

Plaintiff owns and operates a shopping mall in Costa Mesa, California. (Compl. ¶ 1.) Plaintiff alleges that, in March 2020, it closed the mall in response to an Orange County stay-at-home order issued in response to the COVID-19 pandemic. (*Id.* ¶ 3.) Plaintiff alleges it "was forced to suspend all operations" at the mall for "several months" "due to the outbreak of SARS-CoV-2 and COVID-19 in the surrounding area, the resulting existence and/or threat of hazardous conditions at South Coast Plaza, and the related government actions and orders." (*Id.* ¶¶ 3, 28.)

Plaintiff alleges its losses are covered under Lexington Commercial Property Insurance Policy No. 020412856 (the "Policy"). (*Id.* ¶ 15.) Lexington, one of several participating insurers in the commercial property insurance program Plaintiff purchased, has a 40% share of the program's policy limits. (*Id* ¶¶ 14, 15.) Plaintiff

asserts claims against Lexington for breach of contract (Count 1) and bad faith (Count 3) and seeks a declaration of coverage under the Lexington Policy (Count 5). (*Id.* ¶¶ 39-43, 49-57, 67-69.)

**B. The Policy**

Plaintiff seeks coverage under the "Special Time Element – Cancellation Coverage," in the main body of the insurance policy, which provides coverage for certain losses from interference with business at an insured location as a direct result of certain listed occurrences. (Doc. 1-1 at 17-18.)[1] The listed occurrences include, among other things, murder, suicide, rape or other violent crime; food or drink poisoning; flood, earthquake, fire, explosion, windstorm, riot, civil commotion, or communicable or infectious disease within a 10 mile radius of an insured location; and, the "closing of the whole or part of the premises of the Insured…by order of a Public Authority consequent upon the existence or threat of hazardous conditions either actual or suspected at an insured location." (*Id.*)

Plaintiff seeks coverage under this Special Time Element provision based on alleged losses from an outbreak of a contagious or infectious disease at or within 10 miles of Plaintiff's mall or the closure of all or part of the mall due to the existence or threat of hazardous conditions. (*Id.*)[2]

But Endorsement #010 to the Policy – the Pollution, Contamination, Debris Removal Exclusion Endorsement (the "Contamination Exclusion Endorsement") – expressly "modifies" the "insurance provided by the Policy," including the Special Time Element coverage. (Doc. 1-1 at 53.) This endorsement specifically excludes

---

[1] The Policy is attached as Exhibit A to the Complaint and is therefore properly considered by the Court in deciding this motion. *See Hairabedian v. Sec. Nat'l Ins. Co.*, No. 2:22-cv-00920, 2022 WL 1071508, at *1, n.1 (C.D. Cal. Mar. 10, 2022), appeal docketed, No. 22-55355 (Apr. 7, 2022).

[2] This Rule 12(b)(6) motion is based solely on the application of the Contamination Exclusion Endorsement. However, Lexington reserves all other rights and defenses with respect to the policy, including all defenses related to whether the coverage requirements for Special Time Element coverage have otherwise been met.

coverage for loss or damage caused directly or indirectly by the "actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS," with "CONTAMINANTS or POLLUTANTS" defined to include a "virus" that can harm human health or cause the loss of use of property. (*Id.* at 53, 69.) The endorsement applies against loss or damage caused directly or indirectly by the actual or threatened dispersal of a virus, and it applies regardless of any other cause or event contributing to the loss or damage. (*Id.*)

## 3. ARGUMENT

### A. Legal Standards

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims asserted in the complaint. *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1198 (C.D. Cal. 2008). Dismissal is proper where there is a "lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir.1988). While the court accepts all well-pled factual allegations in the complaint as true, the court does not "accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations." *Izenberg*, 589 F. Supp. 2d at 1198.

Under California law, the "interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995) (citation omitted); *see also State Farm Fire & Cas. Co. v. Lewis*, 236 Cal. Rptr. 807, 808 (Cal. Ct. App. 1987) ("The interpretation of an insurance policy, like any other contract, is a matter of law as to which a reviewing court must make its own independent determination"). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the West v. Sup. Ct.*, 10 Cal. Rptr. 2d 538, 544 (1992). The words used in an insurance policy are to be interpreted in their "plain and ordinary sense." *Connick v. Teachers Ins. & Annuity Ass'n of Am*., 784 F.2d 1018, 1020 (9th Cir. 1986), citing *McKee v. State Farm Fire & Cas. Co.*, 193 Cal. Rptr. 745, 746 (Cal. Ct. App. 1983).

**B. The Contamination Exclusion Endorsement Modifies The Special Time Element Coverage.**

The Contamination Exclusion Endorsement modifies the insurance Policy and specifically excludes coverage for the losses Plaintiff alleges in the Complaint. *Adams v. Explorer Ins. Co.*, 132 Cal. Rptr. 2d 24, 33 (Cal. Ct. App. 2003) (emphasis added) ("Endorsements are modifications to the basic insuring forms in the policy" which can "alter or vary any term or condition of the policy.")

Plaintiff baldly alleges, without any explanation whatsoever, that the Contamination Exclusion is "inapplicable." (Compl. ¶ 6.) But the Contamination Exclusion is set forth in an Endorsement which clearly states that "[t]his endorsement modifies insurance provided by the Policy." (Doc. 1-1 at 53.) And California law is clear that where, as here, an endorsement expressly modifies the terms of the main policy, the endorsement trumps the main policy provisions: "If there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls." *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal. 4th 38, 50 n.4 (1997) (quotations and citation omitted); *see also Am. Way Cellular, Inc. v. Travelers Prop. Cas. Co. of Am.*, 157 Cal. Rptr. 3d 385, 399 (Cal. Ct. App. 2013) (same); *Estate of Murphy*, 147 Cal. Rptr. 258, 261 (Cal. Ct. App. 1978) ("It is a well established rule of construction of insurance policies that if the provisions of an effective endorsement conflict with those of the body of the policy, the endorsement controls").

Nor is there any legitimate question that the Contamination Exclusion Endorsement is conspicuous, plain and clear. *Nat'l Bank of Cal. v. Progressive Cas. Ins. Co.*, 938 F. Supp. 2d 919, 933 (C.D. Cal. 2013) (exclusions are enforceable when they are "conspicuous, plain and clear"). The Contamination Exclusion is identified by name and by Endorsement Number on the Forms Schedule that appears on the third page of the Policy. (Doc. 1-1 at 4.) The Endorsement is not buried in the middle of the Policy somewhere — it is set forth separately on its own page and the

title of the Contamination Exclusion is bolded in all-caps at the top. (*Id.* at 53.) The first line of the Endorsement plainly states that it "modifies insurance provided by the Policy." (*Id.*) The Endorsement is short (two pages) and straightforward. There can be no serious dispute that the Contamination Exclusion Endorsement is anything but conspicuous, plain and clear. *See AECOM v. Zurich Am. Ins. Co.*, No. LACV2100237 JAKMRWX, 2021 WL 6425546, at *8-9 (C.D. Cal. Dec. 1, 2021) (similar contamination exclusion "meets these criteria"); *Obagi v. Valley Forge Ins. Co*., No. 2:20-cv-07059ABGJS, 2021 WL 6104407, at *3 (C.D. Cal. Oct. 1, 2021) (an endorsement is conspicuous, plain and clear when it has "no thick text or confusing language," is relatively short, and warns that it modifies the policy); *Nat'l Bank*, 938 F. Supp. 2d at 933 (exclusion endorsement identified by name on the Declarations page and set forth on its own page with a bold header was enforceable).

Binding California law thus requires the application of the Contamination Exclusion Endorsement here. *See, e.g.*, *Venoco, Inc. v. Gulf Underwriters Ins. Co.*, 96 Cal. Rptr. 3d 409, 421 (Cal. Ct. App. 2009) ("as a matter of law, the language of a special endorsement, such as the pollution exclusion, overrides the language in other parts of the policy in case of conflict"); *Allen v. Steadfast Ins. Co.*, No. CV-14-1218, 2014 WL 12569527, at *21 (C.D. Cal. Aug. 22, 2014) (pollution exclusion endorsement applied to preclude coverage).

**C. The Contamination Exclusion Endorsement Precludes Coverage.**

Plaintiff's COVID-related business loss is not a covered cause of loss because such loss is expressly excluded by the Contamination Exclusion. The Contamination Exclusion expressly excludes all loss or damage caused by the "actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS." (Doc. 1-1 at 53.) The Policy defines "contaminants" to include any "virus" which "after its release can cause or threaten damage to human health or human welfare or causes or threatens … loss of use to property insured

hereunder." (*Id.*) And this exclusion applies whether a virus is the "direct or indirect, proximate or remote" cause of the loss or damage. (*Id.*)

The Contamination Exclusion applies here because Plaintiff repeatedly alleges its damages are caused by the actual presence of the COVID-19 virus or the threatened dispersal of the virus. (Compl. ¶ 3) (alleging it was "forced to close South Coast Plaza due to the outbreak of COVID-19 in Orange County"), (¶ 28) (alleging it was "forced to suspend all operations at South Coast Plaza due to the outbreak of SARS-CoV-2 and COVID-19 in the surrounding area" and "the resulting existence and/or threat of hazardous conditions").

In the context of COVID-related insurance coverage claims like this one, numerous courts, including this Court, have held that materially identical exclusions apply and preclude coverage for COVID-related business losses. *See AECOM*, 2021 WL 6425546, at *9-11 (plaintiff's claims barred by similar contamination exclusion); *PBM Nutritionals, LLC v. Lexington Ins. Co.*, 724 S.E.2d 707, 713–14 (Va. 2012) (identical endorsement applied; modifying "the manuscript policy to expand the exclusion of pollution and contamination is consistent with established principles of insurance law"); *Zwillo V, Corp. v. Lexington Ins. Co.*, 504 F. Supp. 3d 1034, 1041-42 (W.D. Mo. 2020) (dismissing COVID-19 business interruption claim on the basis of a near identical exclusion); *Circus Circus LV, LP v. AIG Specialty Ins. Co.*, 525 F. Supp. 3d 1269, 1277-78 (D. Nev. 2021) (same).

Where, as here, the main policy form includes coverage for losses arising from disease, the Contamination Exclusion Endorsement "modifies" the policy to eliminate that coverage. As a federal district court explained in analyzing a similar coverage for "Interruption by Communicable Disease," even if the coverage otherwise applied to COVID-related losses, the Contamination Exclusion Endorsement "unambiguously excludes coverage." *Northwell Health, Inc. v. Lexington Ins. Co.*, 550 F. Supp. 3d 108, 120 (S.D.N.Y. 2021). Applying the same Contamination Exclusion Endorsement at issue here, the Court held that the

Endorsement "'modifies insurance provided by the Policy' … When faced with such language, 'the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement.'" *Id.*at 120-21 (citation omitted).

Here, the Special Time Element Coverage remains in force, except as altered by the Contamination Exclusion Endorsement. The insured could still recover under the Special Time Element Coverage for other occurrences not implicated by the Contamination Exclusion Endorsement – such as murder, suicide, or flood or earthquake within 10 miles of an insured location. But Plaintiff cannot recover for the losses claimed here, which indisputably arise from the actual, alleged or threatened spread of a virus and therefore fall within the Contamination Exclusion Endorsement. There is no need to harmonize the disease cover in the main body of the policy with the Contamination Exclusion Endorsement: "The clear terms of the Contamination exclusion indicate it modifies the base Policy language [extending coverage for disease], such that the exclusion controls with respect to its subject matter." *Alterra Mountain Co. v. Lexington Ins. Co.*, No. 21-cv-23771 at *9 (Denver Cnty. Dist. Ct. Apr. 19, 2022) (construing materially identical Contamination Exclusion Endorsement).

California law requires the same result: where an endorsement "clearly states that it modifies" the insurance policy, "[c]overage may be limited by an endorsement, and if a conflict exists between the main body of the policy and an endorsement, the endorsement prevails." *Genesis Ins. Co. v. BRE Props.*, 916 F. Supp. 2d 1058, 1073 (N.D. Cal. 2013) (rejecting argument that endorsement was inapplicable because it directly conflicted with express duty to defend in the main body of the policy).

The Contamination Exclusion in Endorsement No. 010 plainly applies and bars coverage for Plaintiff's COVID-related claims.

**D. Plaintiff's Declaratory and Bad Faith Claims Also Fail.**

Because Plaintiff's breach of contract claim fails, its bad faith (Count 3) and declaratory judgment (Count 5) claims likewise fail. *Minich v. Allstate Ins. Co.*, 122 Cal. Rptr. 3d 769, 780-81 (Cal. Ct. App. 2011) (where insurer granted judgment as a matter of law on breach of contract claim, bad faith claim also fails); *Ghukasian v. Aegis Sec. Ins. Co.*, No. B311310, 2022 WL 1421511, at *5 (Cal. Ct. App. 2nd Dist. Apr. 14, 2022) ("As Ghukasian is not entitled to coverage (and therefore, her claims for breach of contract and declaratory relief fail as a matter of law), her bad faith claim also fails").

**4. CONCLUSION**

For the foregoing reasons, Lexington respectfully requests the Court grant this motion and dismiss Plaintiff's claims with prejudice.

Dated: June 14, 2022

DENTONS US LLP

By: */s/ Justin A. Martin*
Justin A. Martin

Attorneys for Defendant Lexington Insurance Company